WALLACE ET AL VS ADAMS ET AL.

Opinion delivered June 16, 1905.

(88 S. W. Rep. 308).

*Indians—Citizenship Courts—Constitutionality of Statutes Establishing.*

> The Act of Congress approved July 1, 1902, Chap. 1362, Pars, 31, 32
> and 33 (32 Stat. 646-648) creating the Choctaw and Chickasaws
> Citizenship Court for the purpose of determining all questions of
> citizenship which had been passed upon in the United States Court
> for the Central and Southern Judicial Districts of the Indian Terri-
> tory under the Act of Congress of June 10, 1896 is not in conflict
> with the Constitution of the United States and same was within
> the power of Congress to enact.

Appeal from the United States Court for the Southern
District.

HOSEA TOWNSEND, Judge.

Action by Ella Adams and others against Hugh Wallace
and others. Judgment for plaintiffs. Defendants appeal.
Affirmed.

*Cruce, Cruce & Bleakmore,* for appellants.

*H. H. Brown,* for appellees.

PER CURIAM. The main question presented by this
appeal is one involving the constitutionality of paragraphs 31,
32, and 33 of the act of Congress of July 1, 1902 (32 Stat. 646-
648, c. 1362). These paragraphs are as follows:

"(31) It being claimed and insisted by the Choctaw and
Chickasaw Nations that the United States Courts in the Indian
Territory, acting under the act of Congress approved June 10,
1896, have admitted persons to citizenship or to enrollment as

such citizens in the Choctaw and Chickasaw nations, respectively, without notice of the proceedings in such courts being given to each of said nations; and it being insisted by said nations that, in such proceedings, notice to each of said nations was indispensable; and it being claimed and insisted by said nations that the proceedings in the United States Courts in the Indian Territory, under the said act of June 10, 1896, should have been confined to a review of the action of the Commission to the Five Civilized Tribes, upon the papers and evidence submitted to such commission, and should not have extended to a trial de novo of the question of citizenship; and it being desirable to finally determine these questions, the two nations, jointly, or either of said nations acting separately and making the other party defendant, may, within 90 days after this agreement becomes effective, by a bill in equity filed in the Choctaw and Chickasaw citizenship court hereinafter named, seek the annulment and vacation of all such decisions by said courts. Ten persons so admitted to citizenship or enrollment by said courts, with notice to one but not to both of said nations, shall be made defendants to said suit as representatives of the entire class of persons similarly situated, the number of such persons being too numerous to require all of them to be made individual parties to the suit; but any person so situated may, upon his application, be made a party defendant to the suit. Notice of the institution of said suit shall be personally served upon the chief executive of the defendant nation, if either nation be made a party defendant as aforesaid, and upon each of said ten representative defendants, and shall also be published for a period of four weeks in at least two weekly newspapers having general circulation in the Choctaw and Chickasaw Nations. Such notice shall set forth the nature and prayer of the bill, with the time for answering the same, which shall not be less than thirty days after the last publication. Said suit shall be determined at the earliest practicable time, shall be confined to a final determination of the questions of law here named, and

shall be without prejudice to the determination of any charge or claim that the admission of such persons to citizenship or enrollment by said United States Courts in the Indian Territory was wrongfully obtained as provided in the next section. In the event said citizenship judgments or decisions are annulled or vacated in the test suit hereinbefore authorized, because of either or both of the irregularities claimed and insisted upon by said nations as aforesaid, then the files, papers and proceedings in any citizenship case in which the judgment or decision is so annulled or vacated, shall, upon written application therefor, made within ninety days thereafter by any party thereto, who is thus deprived of a favorable judgment upon his claimed citizenship, be transferred and certified to said citizenship court by the court having custody and control of such files, papers and proceedings, and, upon the filing in such citizenship court of the files, papers and proceedings in any such citizenship case, accompanied by due proof that notice in writing of the transfer and certification thereof has been given to the chief executive officer of each of said nations, said citizenship case shall be docketed in said citizenship court, and such further proceedings shall be had therein in that court as ought to have been had in the court to which the same was taken on appeal from the Commission to the Five Civilized Tribes and as if no judgment or decision had been rendered therein.

"(32) Said citizenship court shall also have appellate jurisdiction over all judgments of the courts in Indian Territory rendered under said act of Congress of June tenth, eighteen hundred and ninety six, admitting persons to citizenship or to enrollment as citizens in either of said nations. The right of appeal may be exercised by the said nations jointly or by either of them acting separately at any time within six months after this agreement is finally ratified. In the exercise of such appellate jurisdiction said citizenship court shall be authorized to

consider, review and revise all such judgments, both as to findings of fact and conclusions of law, and may, wherever in its judgment substantial justice will thereby be subserved, permit either party to any appeal to take and present such further evidence as may be necessary to enable said court to determine the very right of the controversy. And said court shall have power to make all needful rules and regulations prescribing the manner of taking and conducting said appeals and of taking additional evidence therein. Such citizenship court shall also have like appellate jurisdiction and authority over judgments rendered by such courts under the said act denying claims to citizenship or to enrollment as citizens in either of said nations. Such appeals shall be taken within the time hereinbefore specified and shall be taken, conducted and disposed of in the same manner as appeals by the said nations, save that notice of appeals by citizenship claimants shall be served upon the chief executive officer of both nations. Provided, that paragraphs thirty-one, thirty-two and thirty-three hereof shall go into effect immediately after the passage of this act by Congress.

"(33) A court is hereby created, to be known as the Choctaw and Chickasaw Citizenship Court, the existence of which shall terminate upon the final determination of the suits and proceedings named in the last two preceding sections, but in no event later than the thirty-first day of December, nineteen hundred and three. Said court shall have all authority and power necessary to the hearing and determination of the suits and proceedings so committed to its jurisdiction, including the authority to issue and enforce all requisite writs, process and orders, and to prescribe rules and regulations for the transaction of its business. It shall also have all the powers of a Circuit Court of the United States in compelling the production of books, papers and documents, the attendance of witnesses and in punishing contempt. Except where herein otherwise

expressly provided, the pleadings, practice and proceedings in said court shall conform, as near as may be, to the pleadings, practice and proceedings in equity cases in the Circuit Courts of the United States. The testimony shall be taken in court or before one of the judges, so far as practicable. Each judge shall be authorized to grant, in vacation or recess, interlocutory orders and to hear and dispose of interlocutory motions not affecting the substantial merits of the case. Said court shall have a chief judge and two associate judges, a clerk, a stenographer, who shall be deputy clerk, and a bailiff. The judges shall be appointed by the President, by and with the advice and consent of the Senate, and shall each receive a compensation of five thousand dollars per annum, and his necessary and actual traveling and personal expenses while engaged in the performance of his duties. The clerk, stenographer and bailiff shall be appointed by the judges, or a majority of them and shall receive the following yearly compensation: Clerk two thousand four hundred dollars; stenographer, twelve hundred dollars; bailiff, nine hundred dollars. The compensation of all these officers shall be paid by the United States in monthly installments. The moneys to pay said compensations are hereby appropriated, and there is also hereby appropriated the sum of five thousand dollars, or so much thereof as may be necessary, to be expended under the direction of the Secretary of the Interior, to pay such contingent expenses of said court and its officers as to such Secretary may seem proper. Said court shall have a seal, shall sit at such place or places in the Choctaw and Chickasaw Nations as the judges may designate, and shall hold public sessions, beginning the first Monday in each month, so far as may be practicable or necessary. Each judge and the clerk and deputy clerk shall be authorized to administer oaths. All writs and processes issued by said court shall be served by the United States marshal for the district in which the service is to be had. The fees for serving process and

the fees of witnesses shall be paid at whose instance such process is issued or such witnesses are subpoenaed, and the rate of amount of such fees shall be the same as is allowed in civil causes in the Circuit Court of the United States for the Western District of Arkansas. No fees shall be charged by the clerk or other officers of said court. The clerk of the United States Court in Indian Territory having custody and control of the files, papers and proceedings in the original citizenship cases, shall receive a fee of two dollars and fifty cents for transferring and certifying to the citizenship court the files, papers and proceedings in each case, without regard to the number of persons whose citizenship is involved therein, and said fee shall be paid by the person applying for such transfer and certification. The judgment of the citizenship court in any or all of the suits or proceedings so committed to its jurisdiction shall be final. All expenses necessary to the proper conduct, on behalf of the nations, of the suits and proceedings provided for in this and the two preceding sections shall be incurred under the direction of the executives of the two nations, and the Secretary of the Interior is hereby authorized, upon certificate of said executives, to pay such expenses as in his judgment are reasonable and necessary out of any of the joint funds of said nations in the Treasury of the United States."

This court, after examination of the record, is of opinion Congress had the power to enact the provisions above set out and that they are not in conflict with the Constitution of the United States; and the opinion of the court below is therefore affirmed.

TOWNSEND, J., did not sit in the cause.